IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVCO ACQUISITION HOLDING, INC, et al., | : | |
| | : | |
| Plaintiffs, | : | Case No. 2:07-CV-1064 |
| vs. | : | Judge Graham |
| WENDY'S INTERNATIONAL, INC., et al., | : | Magistrate Judge King |
| Defendants. | : | |

**MOTION BY DEFENDANTS WENDY'S INTERNATIONAL, INC.
AND WENDY'S NATIONAL ADVERTISING PROGRAM, INC. TO DISMISS
COMPLAINT FOR FAILURE TO STATE CLAIMS
UPON WHICH RELIEF CAN BE GRANTED**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendants Wendy's International, Inc. and Wendy's National Advertising Program, Inc. respectfully move for an order dismissing each of the three counts of the complaint with prejudice for failure to state a claim upon which relief can be granted.  The grounds for dismissal are set forth in the attached Memorandum in Support.

Respectfully submitted,

/s/ Michael J. Canter
Michael J. Canter (0031015)
mjcanter@vssp.com
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH  43216-1008
Telephone:  614-464-6327
Facsimile:   614-719-4655

Trial Attorney for Defendants,
Wendy's International, Inc. and Wendy's National Advertising Program, Inc.

**OF COUNSEL**:
Carter M. Stewart  (0080507)
cmstewart@vssp.com
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH  43216-1008
Telephone:  614-464-4964
Facsimile:  614-719-5200

## **MEMORANDUM IN SUPPORT**

I.    **PRELIMINARY STATEMENT**

Plaintiffs are franchisees of Wendy's International, Inc. ("Wendy's").  They seek to have Wendy's approve the sale of Pepsi products at their Wendy's restaurants so that they can solicit competing bids from Coke and Pepsi.  Wendy's Franchise Agreement requires Plaintiffs to sell only approved products purchased from approved suppliers.  Since 1998, Wendy's has approved the sale of Coke products at its franchised restaurants and disapproved the sale of Pepsi products.  While the Franchise Agreement entitles Plaintiffs to request approval of alternative suppliers, it does not obligate Wendy's to approve alternate suppliers.  Count I must fail because the facts alleged do not show a breach of the Franchise Agreement.

Under a National Marketing Agreement which Wendy's entered with Coke in 1998, Coke contributes to the Wendy's National Advertising Program ("WNAP") based on total gallons purchased by the entire Wendy's system.  These funds supplement funds that Wendy's and its franchisees contribute to WNAP.  The year before Wendy's entered the National Marketing Agreement with Coke, Plaintiffs entered their own separate agreement with Coke which specifies the price Plaintiffs pay Coke.  Although Count II claims that Coke supports its contributions to WNAP by inflating prices charged to franchisees, Plaintiffs do not contest the prices they pay Coke under their separate agreement.  Rather, Plaintiffs claim they are entitled to a credit against their own obligation to WNAP equal to Coke's contribution.  Count II must fail because the Franchise Agreement does not entitle Plaintiffs to the credit they seek, and because the Franchise Agreement expressly governs disposition of WNAP contributions.

In Count III, Plaintiffs claim a right to recover Coke's contributions directly from WNAP under a theory of unjust enrichment.  Count III must fail because the law does not permit a claim

of unjust enrichment where the subject matter is covered by contract and because Plaintiffs have failed to plead equity superior to WNAP's to retain Coke's contributions.

## II.     PLAINTIFFS' ALLEGATIONS

Plaintiffs' conclusory allegations need not be accepted as true for purposes of this motion.  See Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-1965 (2007).  Plaintiffs' factual allegations pertinent to this motion are summarized below.  Of course, Defendants do not concede the accuracy of those facts, but assume their truth for purposes of this motion.

### *The Parties*

Defendant Wendy's is an Ohio corporation and franchisor of Wendy's Old Fashioned Hamburgers Restaurants.  Complaint, ¶ 4.  Wendy's principal place of business is Dublin, Ohio.  Id., ¶ 3.

Defendant WNAP is an Ohio non-profit corporation with its principal place of business also in Dublin, Ohio.  Id., ¶ 5.  WNAP receives and administers all contributions for national advertising from Wendy's and its franchisees.  Id.

Plaintiff DavCo Restaurants, Inc. ("DavCo") is a Delaware corporation with its principal place of business in Crofton, Maryland.  Id., ¶ 3.  DavCo is a franchisee of Wendy's and operates 159 Wendy's restaurants in Maryland, the District of Columbia, and Northern Virginia.  Id.  Plaintiff DavCo Acquisition Holding, Inc. is the parent of DavCo, and they share the same state of incorporation and principal place of business.  Id., ¶ 2.  Both plaintiffs are referred to herein collectively as "Plaintiffs."

*Approval of Coke As Exclusive Supplier*

Prior to 1998, Wendy's approved both Pepsi and Coke products for sale at its franchised restaurants.  Id., ¶ 12.  In December 1997, Plaintiffs entered an agreement with Coke to sell Coke products exclusively at their Wendy's restaurants.  Id., ¶ 13.  That agreement runs until the earlier of a date specified or the purchase by Plaintiffs of a certain volume of fountain beverage.  Id.

The following year, Wendy's approved Coke as the exclusive supplier of fountain beverages to the Wendy's system and simultaneously disapproved the sale of Pepsi products.  Id., ¶ 14.  Franchisees with existing Pepsi contracts were permitted to continue to sell Pepsi products until their contracts expired.  Id.

*The Franchise Agreement*

In 2003, Plaintiffs entered a new franchise agreement for each of their Wendy's restaurants.  Id., ¶ 10.  All of these agreements are identical and referred to herein as the "Franchise Agreement."  A sample is attached as Exhibit 1.  Wendy's right to approve products and suppliers of products sold in Wendy's restaurants, franchisees' opportunity to suggest alternative suppliers, and Wendy's right to decline those suggestions, are all set forth in Sections 6.11.B and 6.12 of the Franchise Agreement.

Section 6.11.B establishes both Wendy's right to approve products and a franchisee's obligation to offer only approved products.  It states, in relevant part, that a franchisee may:

> [S]ell or offer for sale only such menu items, products, services and related items, including without limitation, promotional and premium items, as have been *expressly approved for sale in writing by Franchisor* . . . and to *discontinue selling and offering for sale any menu items, products or services which Franchisor may, in its discretion, disapprove in writing at any time*.

See Exhibit 1, Section 6.11.B (emphasis added).

3

Section 6.12 establishes both Wendy's right to approve suppliers and a franchisee's obligation to purchase only from approved suppliers. It states, in relevant part, that a franchisee "shall not purchase from any supplier until, and unless, such supplier has been approved in writing by Franchisor." Id., Section 6.12. While Section 6.12 permits a franchisee to request approval of alternative suppliers, it also states: *"Nothing in the foregoing shall be construed to require Franchisor to approve any particular supplier …."* (emphasis added). Id.

### *Plaintiffs' Request That Wendy's Approve Pepsi*

In February 2006, Plaintiffs asked Wendy's for permission to open negotiations with Pepsi. Complaint, ¶ 17. Wendy's responded, reminding Plaintiffs of their contractual obligation to continue to sell only Coke products. Id., ¶ 18. The parties continued to correspond on this subject through March 2007. Id., ¶¶ 20-23. Throughout this period, Wendy's reiterated the terms of the Franchise Agreement, including the fact that only Coke products were approved for sale at Wendy's restaurants. Id.

### *WNAP Contributions*

Wendy's franchisees are required to spend at least 4% of revenue on advertising and promotion. Id., ¶ 25. Wendy's has the right to direct that up to three-fourths (¾) of that amount be contributed to WNAP. Id.

In 2001, Wendy's and Plaintiffs agreed that Plaintiffs would contribute 2 ½% of revenue a year to WNAP, with 2% being paid in the current year and ½% being paid in the following year. Id., ¶ 28. The same agreement applied the following year. In 2003, Wendy's and Plaintiffs agreed that Plaintiffs would contribute 3% of revenue a year to WNAP, with 2% being paid in the current year and 1% being paid in the following year. Id., ¶ 29. That agreement has applied in each year thereafter through to the current year.

4

Under the National Marketing Agreement entered between Wendy's and Coke in 1998, Coke agreed to contribute to WNAP based on the numbers of gallons of Coke products purchased by Wendy's and its franchisees, including Plaintiffs. Id., ¶ 30.

### *Plaintiffs' Claims*

Count I seeks a declaration that Wendy's breached the Franchise Agreement and implied covenant of good faith and fair dealing by "refusing to consider" Plaintiffs' request that Pepsi be approved as an alternative beverage supplier.

Count II seeks damages on the theory that, at Wendy's direction, Coke inflated the cost of fountain beverages to Plaintiffs, then diverted that amount to WNAP, resulting in Plaintiffs contributing more to WNAP than required under the Franchise Agreement.

Count III claims that WNAP was unjustly enriched by the scheme alleged in Count II.

None of the counts state a claim upon which relief can be granted.

### III. ARGUMENT

To avoid dismissal under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S.Ct. at 1974. A plaintiff cannot rely on "labels and conclusions" and "a formulaic recitation of the elements of a cause of action." Id. at 1964-1965. Instead, a plaintiff must plead enough *factual* allegations "to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id. at 1965 (internal citations omitted). Without some factual allegations, a claimant cannot satisfy the requirement of providing "fair notice" of the nature of the claims or the "grounds" on which the claims rest. Id. at 1965 n.3. Conclusory allegations, thus, are insufficient for a complaint to prevail past Rule 12(b)(6). Id. at 1966.

### A. Count I Fails Because Plaintiffs Fail To Allege A Breach of Contract

A claim for breach of contract must allege facts showing that the defendant failed to fulfill an obligation set forth in the contract. See Lawrence v. Lorain Cty. Community College, 127 Ohio App. 3d 546, 548-549 (Ohio Ct. App. 1998).

Plaintiffs do not allege that Wendy's ignored their request that it approve Pepsi products. The complaint concedes that Wendy's and the Plaintiffs corresponded on this subject from August 2006 through March 2007. Complaint, ¶¶ 20-23. Nor do Plaintiffs allege that Wendy's is obligated to approve Pepsi, because they are fully aware that the Franchise Agreement says exactly the opposite: "Nothing in the foregoing shall be construed to require Franchisor to approve any particular supplier …." See Exhibit 1, Section 6.12.

As Plaintiffs seem to be aware, the facts alleged, when held up against the clear language of the Franchise Agreement, show no breach. Therefore, Plaintiffs conflate the language of the Franchise Agreement to construct an obligation that does not exist. What Plaintiffs conflate is their right to request approval of an alternative supplier with *rights reserved to Wendy's* to inspect and evaluate suppliers whose approval is requested. The following is the conflated allegation from the complaint, which posits that Wendy's is obliged to consider Plaintiffs' request "in accordance with criteria set forth in the Franchise Agreement":

> The Franchise Agreements between Wendy's and Plaintiffs specifically grant Plaintiffs the right to submit to Wendy's requests to approve an alternative supplier, *and Wendy's is bound* by the terms of the Franchise Agreement and an implied covenant of good faith and fair dealing *to consider the request* for approval of an alternative supplier *in accordance with the criteria* set forth in the Franchise Agreements.

Complaint, ¶ 40 (emphasis added). After positing a non-existent obligation, the Compliant explains how Wendy's breached that obligation: "Wendy's steadfastly refused to consider Plaintiffs' request to approve Pepsi as an alternative supplier of fountain beverage syrup in

6

accordance with the criteria set forth in the Franchise Agreements." Complaint, ¶ 24. The allegation continues by charging that "Wendy's did not inspect Pepsi's facilities, obtain samples of Pepsi's product for testing, analyze the ability of Pepsi to meet Wendy's standards and specifications for fountain beverage syrup, determine whether Pepsi possesses adequate quality controls and capacity to supply Plaintiffs' needs promptly and reliably." Id.

However, the Franchise Agreement makes clear that Wendy's has no obligation "to consider Plaintiffs' request … *in accordance with the criteria set forth*":

> If Franchisee desires to purchase any products from an unapproved supplier, Franchisee shall submit to Franchisor a written request for such approval. Franchisee shall not purchase from any supplier until, and unless, such supplier has been approved in writing by Franchisor. *Franchisor shall have the right* to require that Franchisor or its agents be permitted to inspect the supplier's facilities, and that samples from the suppler be delivered, either to Franchisor or to an independent laboratory designated by Franchisor for testing. *** *Nothing in the foregoing shall be construed to require Franchisor to approve any particular supplier* ….

See Exhibit 1, Section 6.12 (emphasis added); reprinted in full at Complaint, ¶19.

Count I also claims that Wendy's breached the implied covenant of good faith and fair dealing. However, that implied covenant has no applicability here. The implied covenant of good faith and fair dealing applies where, under a contract, the manner of a party's performance of an obligation is a matter within its discretion and the contract contains no standard for the exercise of that discretion. Littlejohn v. Parrish, 163 Ohio App. 3d 456, 463 (Ohio Ct. App. 2005), citing Amoco Oil Co. v. Erwin, 908 P. 2d 493, 498 (Colo. 1995). As demonstrated immediately above, while the Franchise Agreement grants Plaintiffs a right to request approval of an alternative supplier, it does not oblige Wendy's to consider that request "in accordance with the criteria set forth." The implied covenant of good faith and fair dealing qualifies the

7

manner in which an existing obligation is discharged, but cannot be used to create an obligation where none exists, as Plaintiffs try to do here.

Thus, as Wendy's has no obligation to "to consider Plaintiffs' request … in accordance with the criteria set forth," Count I fails to allege facts showing that Wendy's breached an obligation under the Franchise Agreement.

   **B. Count II Fails Because Plaintiffs Are Not Entitled To Be Credited For Coke's Contribution To WNAP**

Count II theorizes that Wendy's has caused Plaintiffs to make contributions to WNAP in excess of that required of them by the Franchise Agreement. It circuitously charges that Coke's contributions to WNAP are funded through inflated prices charged to franchisees, and therefore Wendy's is obliged to credit those contributions back against Plaintiffs' own obligation to contribute to WNAP.

The sole factual predicate alleged is that the amount of Coke's contribution to WNAP is based on the gallons of Coke products purchased by the Wendy's system. From that fact alone, the complaint leaps to the conclusion that to fund those contributions, Coke inflated the price of its products: "The contributions by CCF to WNAP result in added expense to Plaintiffs (and other franchisees), artificially inflating Plaintiffs' cost of fountain beverage syrup…." Complaint ¶31. The complaint offers no plausible reason to believe this is true, as required by Twombly. If the complaint is allowed to stand, a jury would be permitted to speculate from proof only of Coke's contributions to WNAP that Plaintiffs' prices for Coke products are inflated. This deficiency, by itself, warrants dismissal of Count II.

Not only is Count II insufficiently pled, but the conclusion it urges – that Plaintiffs' prices for Coke products are inflated – is contradicted by Plaintiffs' concession that Plaintiffs freely negotiated their own exclusive agreement with Coke in 1997. Plaintiffs do not complain

8

that the prices they freely negotiated are tainted; rather they complain about the way in which Coke has chosen to use some of its profits from those sales: "At no time *after* DavCo signed its contract with CCF did Wendy's disclose to Plaintiffs that a portion of the purchase price of every gallon of fountain beverage syrup was being contributed by CCF to WNAP...." Complaint, ¶ 46 (emphasis added).

Having benefited for the past nine years from Coke's support of WNAP (and during that period having paid no more than their negotiated price for Coke products), Plaintiffs do not complain that Coke acted improperly in choosing to contribute a portion of its profits to WNAP. Rather, Plaintiffs urge that because the Franchise Agreement caps their obligation to WNAP at up to 3% of revenue (75% of the 4% of revenue franchisees are obligated to spend toward advertising and promotion), Coke's contribution to WNAP, taken from Coke's profits, should be construed as having been paid on behalf of Plaintiffs and credited against Plaintiffs' own obligation: "[N]or did Wendy's ever grant Plaintiffs a credit against the required advertising contribution for the amounts contributed to WNAP by CCF, which were derived from Plaintiffs' purchases of fountain beverage syrup." Id.

Thus, Count II hinges only on whether Wendy's has an obligation to credit franchisees with contributions to WNAP from other sources. Implicitly conceding the Franchise Agreement is clear on this point, the complaint cites no provision entitling Plaintiffs to a credit. The relevant provisions, found at Sections 11.5.A and B, confirm no such entitlement exists:

> Franchisor or its designee shall direct all advertising programs, with sole discretion over the concepts, materials, and media used in such programs and the placement and allocation thereof. Franchisee agrees and acknowledges that WNAP is intended to maximize general public recognition, acceptance, and use of the System; and that *Franchisor and its designee are not obligated, in administering WNAP, to make expenditures for the benefit of Franchisee which are equivalent or proportionate to Franchisee's contribution, or to ensure that any particular franchisee benefits directly or pro rata from expenditures by WNAP*.

9

See, Exhibit 1, Section 11.5.A (emphasis added).

> WNAP, *all contributions thereto*, and any earnings thereon, *shall be used exclusively* to meet any and all costs of maintaining, administering, directing, conducting, and preparing advertising, marketing, public relations and promotional programs and materials, and any other activities which Franchisor believes will enhance the image of the system…

Id., Section 11.5.B (emphasis added).

There being no basis in the Franchise Agreement to support entitlement to a credit, Plaintiffs have concocted a theory without foundation that is premised on their prices for Coke products being inflated. Yet, the facts alleged establish that Plaintiffs complain not about the prices they paid under their agreement with Coke, but rather about how Coke has chosen to use its profits. That being conceded by the complaint, Plaintiffs' inability to demonstrate any entitlement to share directly in the contributions received by WNAP dooms Count II.

Similar theories were advanced under different franchise agreements by plaintiffs in Little Caesar Enterprises, Inc. v. Smith, et al., 895 F.Supp. 884 (E.D.MI 1995), and Dunkin' Donuts Inc. v. N.A.S.T., Inc., 2003 WL 1877626 (N.D.Ill. April 11, 2003), attached as Exhibit 2. Both cases were dismissed on summary judgment because the franchise agreements made no provision for franchisees to benefit from supplier rebates received by the franchisor. Both cases could have been decided under Rule 12(b)(6) because it was the content of the franchise agreements that were dispositive. Wendy's Franchise Agreement is stronger on this point than those at issue in Little Caesar and Dunkin' Donuts because not only does Wendy's Franchise Agreement not entitle franchisees to benefit from supplier contributions received by WNAP, but it also affirmatively states that "all contributions" must be used for the exclusive benefit of WNAP.

10

Thus, Count II must fail because Plaintiffs have failed to show an entitlement to be credited for contributions WNAP receives from Coke.

### C. Count III Fails Because Unjust Enrichment Does Not Lie Where The Subject Matter Is Covered By Contract and Plaintiffs Have Failed To Plead Superior Equity

The Franchise Agreement is governed by Ohio law. See Exhibit 1, Section 26.1. Ohio law precludes recovery in unjust enrichment or quasi-contract where an express contract covers the same subject matter. Aerel, S.R.L. v. PCC Airfoils, LLC, 371 F.Supp.2d 933, 943 (N.D. Ohio 2005); see also, Wolfer Ent., Inc. v. Overbrook Dev. Corp., 132 Ohio App. 3d 353, 357 (Ohio Ct. App. 1999), jurisdictional motion overruled, 86 Ohio St.3d 1420 (1999) (finding that a claim for unjust enrichment is barred when a plaintiff seeks a remedy under the terms of the contract and when the subject matter of the dispute is governed by the contract).

Here, the Franchise Agreement specifies Plaintiffs' obligation to contribute to WNAP and WNAP's obligations with respect to disposition of all contributions it receives. Plaintiffs do not dispute the amount they contributed to WNAP: "Plaintiffs have contributed directly to WNAP the annual amount directed by Wendy's in compliance with the Franchise Agreements with Wendy's." Complaint, ¶ 42. Rather, they claim that because of Coke's contributions together with their own, WNAP is "overfunded." Id, ¶ 50. On that basis, Plaintiffs assert an equitable right to recover Coke's contributions directly from WNAP.

However, the Franchise Agreement precludes distribution of WNAP contributions to franchisees:

> WNAP, *all contributions* thereto, and any earnings thereon, *shall be used exclusively* to meet any and all costs of maintaining, administering, directing, conducting, and preparing advertising, marketing, public relations and promotional programs and materials, and any other activities which Franchisor believes will enhance the image of the system…

11

See Exhibit 1, Section 11.5.B (emphasis added). Thus, what Plaintiffs seek in equity – disgorgement of contributions WNAP received from Coke – is expressly precluded by Plaintiffs' Franchise Agreement with Wendy's. Because the Franchise Agreement addresses the subject matter of the Plaintiff's unjust enrichment claim, that claim is precluded as a matter of law. Id.; Donald Harris Law Firm v. Dwight-Killian, 166 Ohio App. 3d 786, 790 (Ohio Ct. App. 2006) ("Absent fraud or illegality, a party to an express agreement may not bring a claim for unjust enrichment.").

Count III also fails to allege facts necessary to support a claim of unjust enrichment against WNAP. To recover in unjust enrichment, it is not sufficient for the plaintiff simply to show that it conferred a benefit on the defendant. City of Cincinnati v. Fox, 71 Ohio App. 233, 239 (Ohio Ct. App. 1943). Rather, a plaintiff must show that under the circumstances it has a superior equity such that it would be unconscionable for the defendant to retain the benefit. *Id*.

Plaintiffs have alleged no facts showing that their equitable right to Coke's contributions is superior to WNAP's right to retain those contributions. Significantly, Plaintiffs neither allege that Coke's contributions were not expended by WNAP over the past nine years in the manner contemplated by the Franchise Agreement; nor that they, as members of the Wendy's system, did not benefit from those contributions, as contemplated by Sections 11.5.A and B, cited *supra* at pages 9, 10. Plaintiffs do not claim ignorance regarding Coke's contributions to WNAP for the past nine years, but only that Wendy's did not disclose "to Plaintiffs that they would be required to overfund the annual advertising contribution ….." Complaint, ¶ 51. Thus, as shown, *supra*, in support of dismissal of Count II, plaintiffs do not claim that they paid inflated prices for Coke products, but only that Coke made its contributions to WNAP from profits on those sales.

Count III must fail because Plaintiffs have failed to allege any equitable right to benefit directly from Coke's contributions, or that WNAP's disposition of those contributions in accordance with the Franchise Agreement was unjust.

## IV.     CONCLUSION

For the reasons set forth above, Plaintiffs have failed to state claims upon which relief can be granted against Wendy's or WNAP.  For all of these reasons, therefore, Plaintiffs' complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

                    Respectfully submitted,

                    /s/ Michael J. Canter
                    Michael J. Canter  (0031015)
                    mjcanter@vssp.com
                    Vorys, Sater, Seymour and Pease LLP
                    52 East Gay Street
                    P.O. Box 1008
                    Columbus, OH  43216-1008
                    Telephone:  614-464-6327
                    Facsimile:  614-719-4655

                    Trial Attorney for Defendants,
                    Wendy's International, Inc. and Wendy's National Advertising Program, Inc.

**OF COUNSEL**:

Carter M. Stewart  (0080507)
cmstewart@vssp.com
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH  43216-1008
Telephone:  614-464-4964
Facsimile:  614-719-5200

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 26, 2007, the foregoing Motion by Defendants Wendy's International, Inc. and Wendy's National Advertising Program, Inc. to Dismiss Complaint for Failure to State a Claim and Memorandum in Support were filed with the Clerk of Courts using the CM/ECF system, which will send notification of such filing to the following: William C. Wilkinson, Dwight W. Stone, II, Dennis M. Robinson, Jr., counsel for Plaintiffs.

/s/ Michael J. Canter
Michael J. Canter